Reidar **ABRAHAMSEN** and **Malfrid Abrahamsen, et al., Plaintiffs,**

and

**Douglas R. Willoughby, Suzanne M. Hill, Nathan J. Marciano,** and **Barbara C. Jordan, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5136.

United States Court of Appeals, Federal Circuit.

Decided: Sept. 28, 2000

**1361**

Neil D. Kimmelfield, Ball Janik LLP, of Portland, Oregon, argued for plaintiffs-appellants. With him on the brief was James T. McDermott.

Donald B. Tobin, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General; and Kenneth L. Greene, Attorney.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

RADER, Circuit Judge.

Reidar Abrahamsen and 2,630 other former International Business Machines Corporation (IBM) employees received lump-sum payments at the end of their employ-

ment. IBM withheld federal income tax and Federal Insurance Contribution Act (FICA) tax from these exit-incentive buyout payments. The former IBM employees sought refunds of those withheld amounts. On the Government's motion for summary judgment, the United States Court of Federal Claims concluded that the payments did not qualify for exclusion from gross income under 26 U.S.C. § 104(a)(2) (2000) and that they constituted wages subject to FICA tax under 26 U.S.C. § 3121(a) (2000). *See Abrahamsen v. United States,* 44 Fed.Cl. 260 (1999). Because the trial court correctly construed the tax code to permit withholding, this court affirms.

## I.

All 2,631 plaintiffs were at-will employees of IBM, and participated in one of IBM's several voluntary and involuntary exit-incentive programs designed to reduce IBM's overall workforce. The trial court designated four test cases, and upon agreement of the parties, stayed the proceedings in the remaining 2,627 cases. *Abrahamsen,* 44 Fed. Cl. at 260. Each of the test cases is representative of one of IBM's programs. Under all of the programs, the employees agreed to resign, retire, or take a leave of absence before retiring. The employees also executed agreements releasing IBM from all claims related to their separation. An excerpted example of these form agreements follows:

*In exchange for the sums and benefits which you will receive pursuant to the terms of the [program] [you] agree to release [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment.* You agree that this also releases from liability IBM's agents, directors, officers, employees, representatives, successors and assigns (hereinafter "those associated with IBM") ... You also

agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Acts of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. *You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.... IBM will withhold from your [program] payment the appropriate payroll taxes.... In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the [program] payment.*

*Abrahamsen,* 44 Fed.Cl. at 262 (footnote omitted). The parties stipulated that the employees did not actually negotiate with IBM to acquire these agreements.

The four test-case employees each accepted lump-sum cash payments computed based on their salary and years of service to IBM. Employees in the voluntary programs received one week's salary per six months of service, not to exceed fifty-two weeks' salary. Employees in the involuntary programs received payments under the same formula, but with a cap of twenty-six weeks' salary. None of the employees were allowed to negotiate payments that differed from the formula. IBM also informed each employee that their payments would be subject to withholding taxes. The test-case employees stipulated that they did not experience any symptoms of personal injury, that they did not assert or threaten any claim against IBM for personal injury, and that they did not communicate with IBM regarding any personal injuries or claims for personal injury. Finally, other than the fact that the employees agreed to release all claims against IBM generally, nothing in the buyout agreements indicated that IBM considered the payments as settlement of tort or tort-like claims for personal injury or sickness.

## II.

This court reviews the trial court's grant of the Government's motion for summary judgment without deference. *See Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1131 (Fed.Cir.1998); *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1064, 46 USPQ2d 1097, 1103 (Fed. Cir.1998). Summary judgment is appropriate where the record shows no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1372 (Fed. Cir.2000). The Federal Rules of Civil Procedure require courts considering summary judgment to draw all reasonable inferences in favor of the non-movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The employees seek a refund for two reasons. First, the employees consider IBM's exit-incentive payments as damages for tort or tort-type claims related to personal injury or sickness, which are thus excludable from income. *See* 26 U.S.C. § 104(a)(2). Next, the employees do not consider these payments as "wages" or "remuneration for employment" qualifying for taxation under FICA. *See* 26 U.S.C. § 3121(a) and (b).

### A.

■ The tax code provides an extraordinarily broad definition of "gross income." Section 61(a) of the Internal Revenue Code says that "gross income means all income from whatever source derived." *See* 26 U.S.C. § 61(a) (1994). The Supreme Court has explained that this broad definition in § 61(a) shows that Congress has exercised "the full measure of its taxing power ... bring[ing] within the definition of income any accession to wealth." *United States v. Burke,* 504 U.S. 229, 233, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (citations omitted). The Supreme Court has "also emphasized the corollary to § 61(a)'s broad construction, namely, the default

rule of statutory interpretation that exclusions from income must be narrowly construed." *Commissioner v. Schleier,* 515 U.S. 323, 328, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (quoting *Burke,* 504 U.S. at 248, 112 S.Ct. 1867 (Souter, J., concurring)) (quotations omitted). The employees, as the party claiming a tax exemption, bear the burden of establishing their entitlement to an exemption based on a specific provision of the tax code. *See The Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir.1998) (citing *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)).

The employees seek to fit within the narrow exclusion of § 104(a)(2). Under that exclusion, "gross income does not include ... (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or physical sickness." 26 U.S.C. § 104(a)(2). "The term 'damages received (whether by suit or agreement)' means an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c) (1991). The Supreme Court in *Burke* provided some guidance as to the proper construction of the § 104(a)(2) exclusion: "IRS regulations formally have linked identification of a personal injury for purposes of § 104(a)(2) to traditional tort principles." *Burke,* 504 U.S. at 234, 112 S.Ct. 1867.

In *Schleier,* the Supreme Court clarified that two independent tests must be met for a settlement amount to be excluded from gross income under § 104(a)(2). *See Schleier,* 515 U.S. at 337, 115 S.Ct. 2159. Specifically, a taxpayer must show that: (1) the underlying cause of action giving rise to the recovery was "based upon tort or tort type rights"; and (2) the damages were received "on account of personal injuries or [physical] sickness." *Id.*

This court agrees with the trial court's conclusion that the employees did not show that the settlement payments were received "on account of personal injuries or sickness," as required under *Schleier.* Even assuming that the employees suffered some personal injury before entering the payment agreements, no evidence of record suggests that any part of the payments was attributable to those individualized injuries. As found by the trial court, the payments were calculated based on each employee's salary and years of service to IBM. Rather than reflecting an individualized amount for each employee based on the unique individual injuries of that employee, the payments reflected an amount associated with the employee's work record. *Abrahamsen,* 44 Fed.Cl. at 270–71. Thus, as in *Schleier,* the amount of payment was "completely independent of the existence or extent of any personal injury." 515 U.S. at 330, 115 S.Ct. 2159.

Because the employees have not shown that the payments at issue were made on account of any personal injury, they have not satisfied the second *Schleier* test. *See Pipitone v. United States,* 180 F.3d 859, 865 (7th Cir.1999) ("[T]he record is devoid of any evidence demonstrating what, if any, portion of the payments made to Pipitone was allocable to his alleged claims of tort or tort-type damages for personal injuries and sickness."). This court therefore affirms the Court of Federal Claims' holding that § 104(a)(2) does not operate to exclude these payments from the employees' gross income.

**B.**

This court next considers whether IBM's exit-incentive payments are "wages" based on "remuneration for employment" as defined under FICA. *See* 26 U.S.C. § 3121(a) and (b). FICA taxes, which fund Social Security programs, are calculated as a percentage of an employee's wages. The term "wages" encompasses "all remuneration for employment" unless specifically excepted. 26 U.S.C. § 3121(a).

"Employment," in turn, means "any service, of whatever nature, performed ... by an employee for the person employing him." 26 U.S.C. § 3121(b).

The Supreme Court interprets the phrase "remuneration for employment" as it appears in § 3121 broadly. *See Social Sec. Bd. v. Nierotko,* 327 U.S. 358, 365, 66 S.Ct. 637, 90 L.Ed. 718 (1946) ("The very words 'any service ... performed ... for his employer,' with the purpose of the Social Security Act in mind, import breadth of coverage."). Specifically, the Supreme Court in *Nierotko* concluded that "service" in the phrase "any service performed" means not only work actually performed, but also the entire employer-employee relationship for which compensation is paid to the employee by the employer. *See id.* at 365–66, 66 S.Ct. 637. Under this interpretation, for instance, the Court concluded that "back pay" granted under the National Labor Relations Act to a wrongfully discharged employee constituted "wages" under the Social Security Act. *See id.* at 364, 66 S.Ct. 637.

■■■ In a tax refund case, the taxpayer bears the burden of establishing the right to a refund. *See Snap–On Tools, Inc. v. United States,* 26 Cl.Ct. 1045, 1055 (1992), *aff'd* 26 F.3d 137 (Fed.Cir.1994). Thus, the employees bear the burden of establishing that the payments at issue did not constitute "wages" for FICA purposes. The employees suggest that IBM made the exit-incentive payments for a purpose other than remuneration for employment, namely to prevent departing employees from suing IBM. Thus, the employees contend, the Court of Federal Claims erroneously based its holding that the payments were wages on IBM's formula for determining amounts of the payments ("severance-type"), rather than on the purpose for which the payments were made (non-compensatory). The record shows, however, that IBM also intended the payments to facilitate its efforts to downsize the company, to ease departing employees' transition into a new career or retirement, to maintain a good corporate image and employee morale, and to treat employees fairly. Thus, the record reveals that the payments were intended both to induce employees to leave and to settle any claims the employees may have had against IBM.

The definition of "wages" in 26 U.S.C. § 3121(a) and the Supreme Court's interpretation of the term in *Nierotko* lead us to conclude that the payments at issue here are "wages" subject to FICA taxes. If the payments at issue were merely severance payments that were not conditioned on a release of any claims, they would constitute "wages" because they would be compensation paid to the employees by their employer for the employer-employee relationship. *See Nierotko,* 327 U.S. at 365–66, 66 S.Ct. 637; *see also* H.R. Rep. No. 81–1300 at 124, *reprinted in* 1950–2 C.B. 255, 277 (explaining that § 3121(a)–1 "contains no provision comparable to ... existing law which excludes from the term 'wages' dismissal payments which the employer is not legally required to make," and stating that "[t]herefore, a dismissal payment, which is any payment made by an employer on account of involuntary separation of the employee from the service of the employer, will constitute wages"); *cf.* 26 C.F.R. § 31.3401(a)–1(b)(4) (providing that "[a]ny payments made by an employer to an employee on account of ... involuntary separation ... constitute wages" under 26 U.S.C. § 3401); Rev. Rul. 90–72, 1990–2 C.B. 211 (stating that, although there are no regulations on point, the rule set forth in 26 C.F.R. § 31.3401(a)–1(b)(4) generally applies to FICA). *Nierotko* squarely holds that "wages" need not be compensation for services actually rendered. *See Nierotko,* 327 U.S. at 365–66, 66 S.Ct. 637. Accordingly, the cases cited by the employees for the proposition that severance payments are not payments for services rendered do not undermine the conclusion that such payments are "wages" for FICA purposes.

As set forth above, the payments at issue were at least partially motivated by IBM's desire to settle any claims depart-

ing employees may have had against it. The employees, however, have failed to demonstrate that the payments were so closely related to such claims that they constituted settlement payments instead of severance payments made to compensate for the employer-employee relationship. The employees stipulated that they had not asserted or threatened any claim against IBM for personal injury, and that they had not communicated with IBM regarding any personal injuries or claims for personal injury. Moreover, no evidence of record suggests that the employees had made any other claims against IBM, or had informed IBM of any other claims they had against it.

Furthermore, as discussed above, the agreements set the amount of the lump-sum cash payments using a formula based on the departing employee's salary and years of service to IBM, not on the nature or magnitude of any claim the employee may have been releasing. This formula further associates the payments with the employer-employee relationship, and distances them from any specific claim an employee may have had. Several circuit courts have held that payments made to "laid-off" employees to settle class action suits regarding ERISA violations were "wages" subject to FICA. *See Mayberry v. United States*, 151 F.3d 855, 860 (8th Cir. 1998); *Hemelt v. United States*, 122 F.3d, 204, 209 (4th Cir.1997). These courts rested their decision at least in part on the fact that the payments were calculated based on the length of employment tenure and salary. *See Mayberry*, 151 F.3d at 860; *Hemelt*, 122 F.3d at 210. This court therefore concludes that the trial court in this case correctly determined that the releases did "not change the wage-like or severance-like character of the payments." *Abrahamsen*, 44 Fed. Cl. at 273. This court affirms the holding of the Court of Federal Claims that the payments at issue were "wages" subject to FICA taxation.

## CONCLUSION

This court affirms the Court of Federal Claims' grant of summary judgment.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*