KENNEDY, J., delivered the opinion of the court, in which COOK, J., joined. GRIFFIN, J. (pp. 196 - 205), delivered a separate opinion concurring in part and dissenting in part.
OPINION
KENNEDY, Circuit Judge.
In these cases consolidated on appeal, we address whether payments made to public school teachers, who relinquished their statutory tenure rights and resigned from their positions upon accepting the payments, constitute “wages” taxable under the Federal Insurance Contribution Act (“FICA”). Appoloni v. United States was filed in the United States District Court for the Western District of Michigan; Klender v. United States was filed in the United States District Court for the Eastern District of Michigan. In each case, both parties filed cross-motions for summary judgment. In Appoloni, the district court granted summary judgment for the government; in Mender, the court granted summary judgment for the Plaintiffs. For the following reasons, we hold that the payments made in exchange for the relinquishment of statutorily granted tenure rights constitute “wages” taxable under FICA. Thus, we REVERSE the district court’s judgment in Mender, and we AFFIRM the court’s judgment in Ap-poloni.

BACKGROUND

On March 27, 2002, three taxpayers filed suit in the Eastern District of Michigan. On November 21, 2002, three taxpayers brought suit in the Western District of Michigan. Both lawsuits were certified as class actions and differ only in minor respects not relevant here. In general, the class encompasses all former employees of Michigan school districts and public post-secondary education institutions, residing in the Eastern (Mender) and Western (Appoloni) Districts of Michigan who received early retirement incentive payments from their respective school districts and who unsuccessfully applied to the Internal Revenue Service (“IRS”) for refunds of FICA taxes withheld from those payments.
I. Appoloni
Plaintiffs, Donald Appoloni, William Bergemann, and Sandra Engle, were tenured public school teachers employed by the Dowagiac Union Public School District (the “School District”). All three had been granted tenure by the School District pursuant to the Michigan Teachers’ Act (“Tenure Act”) Mich. Comp. Laws § 38.71. In Michigan, a teacher automatically earns tenure by successfully completing a probationary period. See Mich. Comp. Laws § 38.71. As tenured teachers, Plaintiffs were entitled to continued employment with their respective school districts absent “reasonable and just cause” and subject to the procedural protections set forth in the Tenure Act.
During the 2000-2001 school year, the School District offered an early “employee severance plan” (“ESP”) to its most senior teachers. Teachers who had at least ten years of service with the School District and were at a high step in the pay scale, were eligible to participate in the plan. Participation in the plan was voluntary, and the plan provided that if more than 30 eligible teachers applied, eligibility to participate would be determined on the basis of seniority. The purpose of this plan was to “help prevent teacher layoffs and to *188 lessen the Board’s economic responsibility in the area of staffing.” J.A. at 77.
Participants in the ESP were required to resign as of June 30, 2001, and to agree to a waiver providing that the teacher “waived all claims arising out of employment with the District, including claims ... under the Tenure Act.” Additionally, participating teachers agreed to “waive ... all entitlement to future wage and benefit increases, all rights to participate in any district sponsored benefit plans” and agreed to not “apply for reemployment” without the School District’s consent. J.A. at 81. Participating teachers received the equivalent of their 1999-2000 annual base salary (but not more than $53,021) in 60 monthly payments over a five-year period. J.A. at 25.
The School District withheld FICA taxes from the installment payments. Relying on the Eighth Circuit’s decision in North Dakota State Univ. v. United States, 255 F.3d 599 (8th Cir.2001), the taxpayers filed claims for refunds of the FICA taxes withheld, and when the IRS denied those claims, the taxpayers filed suit in the Western District of Michigan.
Both the Plaintiffs and the government filed motions for summary judgment. The district court granted the government’s motion and denied the Plaintiffs’ motion. Plaintiffs filed this timely appeal.
II. Klender
The Klender litigation similarly involves tenured teachers who were offered an “Employee Severance Plan” designed to induce tenured teachers to retire. In Klender, all three Plaintiffs — Phyllis F. Klender, Roger J. Petri, William B. Rase — were employed as Michigan public school teachers and also had been granted tenure pursuant to the Tenure Act.
Plaintiff Klender accepted a buyout that the Pinconning Area School District offered her during the 1999-2000 school year. The buyout was offered to teachers with 20 or more years of service with the district. Any eligible teacher who agreed to retire as of June 30, 2000, would receive a payment of $46,800 made in 72 monthly installments over six years. In exchange, teachers were required to “waive ... all future employment rights,” to agree not to apply for re-employment in the district without the district’s consent, and to “waive and release the District forever from rights to re-employment and from any claims based, inter alia, on her ‘tenure rights.’ ” J.A. at 47.
Plaintiff Petri accepted a “Voluntary Teacher Severance Incentive Program” offered by the Pinconning Area School District to teachers with ten or more years of service. If an eligible teacher agreed to “voluntarily resign his or her employment with Pinconning Area Schools [and] forfeit all seniority rights,” the teacher would receive a minimum guaranteed payment of $2,000. That payment increased to a total of $37,500 if ten or more eligible teachers opted to participate in the program. Plaintiff Petri accepted the buyout offer on February 17,1997.
Plaintiff Rase also accepted a buyout that was offered pursuant to an “early retirement” provision in a collective bargaining agreement between the West Branch-Rose City Area School District and the West Branch-Rose City Education Association. Teachers with a minimum of 20 years’ service in the District and 25-29 years’ credit under the Michigan Public School Employees’ Retirement Plan qualified for an early retirement incentive. Incentive payments began at $30,00 for teachers with 25 years and decreased by $5,000 for each additional year of retirement credits up to 29. On January 24, *189 2001, Plaintiff Ease announced his retirement.
In making these buyout payments to Plaintiffs Klender, Petri, and Rase, the school districts withheld FICA taxes from the amount paid. Between August and October of 2001, all three Plaintiffs filed claims for refunds with the IRS. The IRS denied the claims. Plaintiffs then filed this action in the Eastern District of Michigan. Both parties filed cross motions for summary judgment. The district court denied the government’s motion and granted the Plaintiffs’. This appeal followed.

STANDARD OF REVIEW

We review a district court’s grant of a motion for summary judgment de novo. Wojcik v. City of Romulus, 257 F.3d 600, 608 (6th Cir.2001). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.” Fed.R.Civ.P. 56(c). “There is no such issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... [T]he inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). “The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate.” Parks v. LaFace Records, 329 F.3d 437, 444 (6th Cir.2003). <cWhen reviewing cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.” Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506 (6th Cir.2003).

ANALYSIS

This case presents an issue of first impression in this circuit: are payments made by school districts to public school teachers in exchange for the relinquishment of those teachers’ statutorily granted tenure rights considered “wages” taxable under FICA?
FICA, codified in Chapter 21 of the Internal Revenue Code, Sections 3101 through 3128, imposes a tax upon the wages of employees to fund Social Security and Medicare Benefits. This tax is collected by the employer by deducting the tax from wages at the time of payment. Section 3111 imposes a matching tax on the employer with respect to wages paid to the employee.
Plaintiffs argue that the payments in this case should not be considered “wages” for purposes of FICA, and therefore, FICA taxes were wrongly withheld from those payments. Plaintiffs rely on an Eighth Circuit decision, North Dakota State Univ. v. United States, 255 F.3d 599 (8th Cir.2001), for this proposition. In North Dakota, payments were made to tenured university professors pursuant to an early retirement program. That court held that those payments were not “wages” for FICA purposes.
The government argues that North Dakota is distinguishable and that the payments at issue in this case easily fit within the statutory definition of “wages,” and thus, the taxes were properly withheld.
I.
We begin by examining the definition of “wages” for purposes of FICA. Section 3121(a) of the Internal Revenue Code defines “wages” as “all remuneration for em *190 ployment, including the cash value of all remuneration (including benefits) paid in any medium other than cash.” Section 3121(a) lists exceptions to this expansive definition but none apply here. “Employment” is defined, in I.R.C. § 3121(b), as “any service, of whatever nature, performed (A) by an employee for the person employing him.” “Remuneration for employment,” unless specifically excepted, “constitutes wages even though at the time paid the relationship of employer and employee no longer exists between the person in whose employ the services were performed and the individual who performed them.” Treas. Reg § 31.3121 (a) — 1 (i). As explained in Treas. Reg. § 31.3121(a)-1(c), “[t]he name by which the remuneration for employment is designated is immaterial”; “salaries, fees, bonuses, and commissions ... are wages if paid as compensation for employment.” Congress, by enacting FICA, intended to impose FICA taxes on a broad range of remuneration in order to accomplish the remedial purposes of the Social Security Act. See H.R.Rep. No. 74-615, at 3 (1935) (describing the aims of the Social Security Act).
Both the Supreme Court and this circuit have emphasized the broad, inclusive nature of this definition. For example, in Soc. Sec. Bd. v. Nierotko, 327 U.S. 358, 365-66, 66 S.Ct. 637, 90 L.Ed. 718 (1946), the Supreme Court held that back pay awarded to wrongfully discharged employees under the National Labor Relations Act constituted “wages” for purposes of the Social Security Act of 1935. The Court specifically rejected the argument that “service” as used in the Act should be limited to “only productive activity” and emphasized the broad nature of the definition of FICA “wages”:
The very words ‘any service ... performed ... for his employer,’ with the purpose of the Social Security Act in mind import breadth of coverage. They admonish us against holding that ‘service’ can be only productive activity. We think that ‘service’ as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.
Id. (emphasis added) (quoting I.R.C. § 3121(a)).
In this circuit, we have followed the reasoning of Nierotko and have also emphasized that the “phrase ‘remuneration for employment’ as it appears in § 3121 should be interpreted broadly.” Gerbec v. United States, 164 F.3d 1015, 1026 (6th Cir.1999). In Gerbec, employees were laid off just before qualifying for pension benefits and they sued under the Employment Retirement Income and Security Act of 1974. The parties settled and the employees received payments pursuant to a settlement agreement. While we found that some of those payments constituted damages for a tort-type personal injury claim and thus were exempt from FICA taxes, we held that damages compensating the plaintiffs for lost wages — including back wages or future wages — were subject to income and FICA taxes. We reasoned:
The holding in Nierotko clearly supports the conclusion that awards representing a loss in wages, both back wages and future wages, that otherwise would have been paid, reflect compensation paid to the employee because of the employer-employee relationship, regardless of whether the employee actually worked during the time period in question.
Id. Thus, under the holding in Gerbec, had the Plaintiffs been terminated without cause and thus wrongfully denied the right they gave up in this case — the right to continued “for cause” employment — those “front pay” wages would have been subject *191 to FICA taxation. See id. This is in contrast to the erroneous conclusion by the district court in Klender, “[t]he illegal deprivation of [Plaintiffs’] rights would have given rise to a cause of action for damages, and those damages recovered would not be taxable under the Sixth Circuit’s reasoning in Gerbec.” Klender v. United States, 328 F.Supp.2d 754, 767 (E.D.Mich.2004).
Both Nierotko and Gerbec demonstrate the way in which courts have broadly interpreted the definition of “wages” for purposes of FICA.[1] The dissent indicates that our result is “largely ordained” by our choice to define this statute broadly. While we maintain such a construction of this statute is proper, we find a broad construction is not necessary, as we hold the facts presented easily fit within the definition of “wages,” for the following reasons.
A.
First, the eligibility requirements for qualifying for a payment — -that a teacher served a minimum number of years — indicate the payments were for services performed rather than for the relinquishment of tenure rights. In determining whether a payment constitutes wages, courts have looked to eligibility requirements, specifically longevity, as an important factor. See Sheet Metal Workers Local HI Supplemental Unemployment Benefit Trust Fund v. United States, 64 F.3d 245, 250 (6th Cir.1995); Associated Elec. Coop., Inc. v. United States, 226 F.3d 1322, 1328 (Fed.Cir.2000); Abrahamsen v. United States, 228 F.3d 1360, 1365 (Fed.Cir.2000). We have consistently held that where a payment arises out of the employment relationship, and is conditioned on a minimum number of years of service, such a payment constitutes FICA wages.
For example, in Sheet Metal, we addressed whether distributions to employees from a Supplemental Unemployment Benefit Fund were wages for FICA purposes. Sheet Metal, 64 F.3d at 250. The distributions were derived solely from employer contributions, and eligibility for those distributions was contingent on an employee’s length of service. We evaluated. whether those payments were “remuneration for employment” and stated that “eligibility requirements provide the most accurate test to determine whether a payment is truly in consideration for services.” Id. at 251 (emphasis added); see also Associated Elec. Coop., Inc., 226 F.3d at 1328 (noting that while the method of computing severance payments, including the length of service and pay rate, were not “dispositive,” the method is “a relevant factor in determining whether the payments constitute ‘wages’ ”); Abrahamsen, 228 F.3d at 1365 (finding that severance *192 payments constituted FICA wages based in part on the fact that the employer used a “formula based on the departing employee’s salary and years of service”); Cohen v. United States, 63 F.Supp.2d 1131, 1134 (C.D.Cal.1999) (finding that the severance payment was' subject to FICA tax where it was only available to employees with twenty or more years of continuous service and noting that courts “look to the eligibility requirements for determining whether the payments are compensation for services”); Hemelt v. United States, 122 F.3d 204, 210 (4th Cir.1997) (“[K]ey factors in determining the amounts of each award were the length of each employee’s tenure with Continental and the salary he received from Continental.... [Bjecause the payments from Continental to taxpayers and other class members arose out of their employment relationship, they fit within the statutory and regulatory definition of wages, and FICA taxes were properly withheld from the awards.”).
In this case, the severance payments were conditioned upon a teacher having served a certain number of years- — exceeding that of obtaining tenure under Michigan law — with the school district. In Appoloni, the school district offered a severance payment to teachers who had at least ten years of service with the School District and who were at a high step in the pay scale. Similarly, in Klender, the severance payments were only offered to those teachers who had served for a certain number of years in excess of that required to achieve tenure: Klender accepted a buyout requiring 20 or more years of service with the district; Petri accepted a severance package requiring ten or more years of service; and Rase accepted a buyout that was offered to teachers with a minimum of 20 years of service.
Plaintiffs necessarily had to have tenure to be eligible for the buyout. However, longevity — not tenure — was the key factor for determining eligibility because these early retirement payments were offered to encourage teachers at a high pay rate to retire. Thus, the payments at issue in this case, like those in Sheet Metal, arose out of the employment relationship, and were conditioned on a minimum number of years of service.
B.
Plaintiffs make much of the fact that they gave up their rights as tenured teachers to continued employment absent just cause for termination. They argue that because the payments were in exchange for the relinquishment of that right, the payments are not “wages” taxable under FICA. This leads us to our next point: just because a teacher relinquishes a right when accepting early retirement does not convert what would be FICA wages into something else.
Plaintiffs maintain that the school districts were “buying” their tenure rights. This point also greatly influences the dissent. Yet, a court must not look simply at what is being relinquished at the point a severance payment is offered, but rather, how the right relinquished was earned. Thus, we cannot understate the importance of the fact that a teacher earns tenure by successfully completing a probationary period (Mich. Comp. Laws § 38.71). In other words, a teacher does not obtain tenure at the onset of employment; it is a right that is earned like any other job benefit. Admittedly, the grant of this right is guaranteed and protected by statute. But we fail to see how the fact that this right is protected by statute takes away from the point that it still must be *193 earned through services to the employer.[2]
In any event, the payments at issue were not in exchange solely for the tenure rights; they were in exchange for the teachers’ early retirement, and, as such, were essentially severance payments. We fail to see how this is different from other severance packages just because a “tenure” right was exchanged. In almost all severance packages an employee gives up something, and we have a hard time distinguishing this case from similar cases where an employee, pursuant to a severance package, gives up rights in exchange. Courts have consistently held that severance payments for the relinquishment of rights in the course of an employment relationship are FICA wages. In fact, we are at a loss to find a case, other than the Eighth Circuit’s decision, to hold otherwise.
For example, in Abrahamsen, severance payments were conditioned on employees waiving all future claims against the employer. Abrahamsen, 228 F.3d 1360. The court noted that the payments were “intended both to induce employees to leave and to settle any claims the employees may have had against IBM.” Id. at 1364. However, the court found that even though the plaintiffs were relinquishing this right and even though the employer offered this payment, in part, because plaintiffs waived this right, this did not change the wage-like character of the severance payments and those payments were subject to the FICA tax. Id.; see also Cohen, 63 F.Supp.2d at 1135 (finding severance pay-meats subject to FICA tax where plaintiffs voluntarily accepted severance package and, in doing so, waived all rights against the defendant to future employment).
Similarly, in Associated Electric, the plaintiff-taxpayers argued their severance payments were not “wages” because the payments were made to union employees “in exchange for valuable rights, i.e., the union’s promise not to strike, and thus were not for services performed.” Associated Electric, 226 F.3d at 1328. Like the court in Abrahamsen, the court found that because the employer’s motivations “were not solely to avoid labor unrest,” the payments constituted FICA “wages.” Id.
In this case, the school district’s motivation was not to buy tenure rights — the motivation was to induce those teachers at the highest pay scales to retire early.[3] Relinquishment of tenure rights was simply a necessary and incidental part of accepting the buyout. In other words, in order to offer the teachers a buyout, the school districts had to ask that they give up their right to future employment — the same as with any severance package Thus, especially in light of the school district’s purpose in offering these severance payments, we see no reason to differentiate the relinquishment of tenure rights from the relinquishment of other benefits earned during the course of employment, like the right to bring suit, or rights associated with seniority.
C.
Finally, we agree with the government’s position that the most applicable *194 revenue ruling indicates the severance payments are FICA “wages.” Revenue rulings are not entitled to the same degree of deference accorded a statute however, some degree of deference is appropriate depending upon “the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.” Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); Aeroquip-Vickers, Inc. v. Comm’r, 347 F.3d 173, 180 (6th Cir.2003) (finding revenue rulings receive Skidmore deference); but c.f. Ammex, Inc. v. United States, 367 F.3d 530, 535 (6th Cir.2004) (finding revenue rulings get the same deference as Treasury Regulations). Consideration of all of these factors leads us to conclude that some deference is due to Revenue Ruling 58-301 and Revenue Ruling 75-44.
Plaintiffs argue this case is most analogous to Revenue Ruling 58-301,[4] the revenue ruling relied on by the Eighth Circuit in North Dakota. In Revenue Ruling 58-301, an employee with a five-year contract right to employment agreed to relinquish that right during the second year in exchange for a lump sum payment. The IRS concluded that payments for relinquishment of rights under a contract are not “wages” under FICA.
The government contends this case presents an issue more closely related to Revenue Ruling 75-44, where an employee, under a general contract, “acquired both the rights to security in his employment and to additional pay or other recog-. nition for longevity” based on his years of service to the employer. Rev. Rul. 75-44 (emphasis added). In exchange for the employee’s agreement to refrain from asserting either his seniority rights or job security rights, the employee received a lump sum payment. The IRS held that because the employee “had acquired his relinquished employment rights through his previous performance of services,” the payment constituted remuneration for services under the Railroad Retirement Act (the counterpart of FICA for railroad employees). Id. We agree with the government and find Revenue Ruling 75^44 to be the most analogous revenue ruling.
In Revenue Ruling 58-301, the employee was granted, at the time of employment, a contractual right to employment for five years. In contrast, the Plaintiffs received their statutorily-granted tenure rights after a certain requisite number of years of service. As previously emphasized, in Michigan, tenure is automatically granted, pursuant to a statute, after a teacher completes a probationary period. We see this case as one where the teacher earned tenure through his/her “previous performance of services.” Rev. Rul. 75^44. Thus, the most analogous revenue ruling, Revenue Ruling 75-44, also indicates that the severance payments at issue are FICA wages.
*195 II.
We recognize our holding, and our reliance on Revenue Ruling 75-44, differs from what the Eighth Circuit held in North Dakota; however we believe that we have reached the correct result.[5] As stated in CSX Corp. Inc. v. United States, 52 Fed.Cl. 208 (Ct.Fed.C1.2002), where the United States Court of Federal Claims disagreed with the holding in North Dakota:
[R]ights to vacation pay, sick pay, layoff pay, and seniority&emdash;constituted part of the employee’s total compensation package and, hence, constituted wages. Therefore, when these job-related benefits are relinquished in favor of a lump-sum payment, the transaction simply amounts to a redemption, paid in cash, of wage amounts previously paid in kind. Because a separation payment is simply an exchange of equivalent values, what were wages at the start remain wages at the end.
Id. at 221 (emphasis added). For the reasons previously discussed, we agree with the reasoning of the court in CSX. In doing so we give effect to Congress’ definition of wages as “all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash.” I.R.C. § 3121(a) (emphasis added). Tenure rights were previously paid in kind&emdash;job security&emdash;and now are being paid in cash.
To summarize, we find of it of great significance that the tenure rights at issue were earned through service to the employer. This is for two reasons. First, we see no reason to differentiate tenure rights from any other right an employee earns through service to any employer. As discussed, courts have found the relinquishment of seniority rights, rights to bring suit, and other types of rights in exchange for a severance payment constitute FICA wages. See e.g. Abrahamsen, 228 F.3d 1360 (severance payments conditioned upon employees waiving all future claims against the employer); Associated Elec., 226 F.3d at 1328 (severance payments were not “wages” because the payments were made to union employees in exchange for the union’s promise not to strike); Cohen, 63 F.Supp.2d at 1135 (court found severance payments subject to FICA tax where plaintiffs voluntarily accepted severance payments and, in doing so, waived all rights against the defendant to future employment). Secondly, because these rights were earned through service rather than contracted for at the time of employment, this suggests Rev. Rul. 75-44 is more on point than Rev. Rul. 58-301.[6]
We also want to again emphasize the importance of the school district’s principal *196 purpose in offering these severance payments. The school district’s purpose here was not to “buy” tenure rights. It was to induce those at the highest pay scales to voluntarily retire early. Relinquishment of tenure rights was incidental to the acceptance of the severance payment. A school district could not offer an early retirement payment and permit the teacher to keep his/her tenure and remain employed. The relinquishment of these tenure rights — like the relinquishment of the rights in Abrahamsen and Associated Electric — was necessary to accepting the severance payment.
Thus, we find that the severance payments at issue easily fall within the definition of FICA wages as “all remuneration for employment.” I.R.C. § 3121(a).

CONCLUSION

For the foregoing reasons we AFFIRM the district court’s judgment in Appoloni and we REVERSE the district court’s judgment in Klender and remand with instructions to enter summary judgment for the government.

. The dissent claims that in Rowan Companies, Inc. v. United States, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), the Supreme Court rejected "any notion that § 3121 should be interpreted broadly.” (emphasis added). Neither the holding in Rowan — nor the passage quoted by the dissent from Rowan — stands for this proposition. The Court in Rowan stated that it was not persuaded by the argument that Congress intended "remuneration” to include a broad range of remuneration which included, in that case, the payment of meals and lodging. The Court did not cite to Nierotko, nor did it purport to alter its previous finding that, "[t]he very words 'any service ... performed ... for his employer,' with the purpose of the Social Security Act in mind import breadth of coverage.” Nierotko, 327 U.S. at 365-66, 66 S.Ct. 637 (emphasis added). We further note that we have no disagreement with the principle that courts should look to the language of a statute when interpreting a statute; however, we emphasize that courts also should look to the way in which both the Supreme Court and our court have indicated a statute is to be interpreted— and in the case of FICA "wages,” that's broadly.

. We note that the dissent fails to provide any explanation for why the fact the grant of tenure rights is protected by a statute is important in this case. Many benefits bestowed upon employees are protected by statute — for example, the right to bring suit — but courts have not found this point to be of any import when holding that severance packages in exchange, in part, for the relinquishment of such rights are taxable under FICA. Abraham-sen, 228 F.3d 1360.

. For example, in Appoloni, the stated purpose of the plan was to "help prevent teacher layoffs and to lessen the Board's economic responsibility in the area of staffing." J.A. at 77.

. The governments points to a recently issued revenue ruling, Rev. Rul.2004-110 which purports to supercede Revenue Rulings 58-301 and 55-520 (which Rev. Rul. 58-301 relied on). Revenue Ruling 2004-110 explains that those earlier rulings "erred in their analysis by failing to apply the Code and regulations appropriately to the question of whether the payments made in cancellation of the employment contract were wages.” However, Revenue Ruling 2004-110 was issued after the district courts issued opinions in both Appolo-ni and Klender. In Revenue Ruling 2004-110, the IRS stated that it would not apply to payments made by an employer prior to January 12, 2005. Because a large portion of the payments to which plaintiffs were entitled under the buyout agreements were made prior to this date, and because we hold that Revenue Ruling 75-44 is analogous to the facts of this case, we decline to rely on Revenue Ruling 2004-110 in making our decision.

. We also note that North Dakota is factually distinguishable. In North Dakota, even though the monetary amount of any individuals rights was determined, at least partially, by length of service, the tenure rights in North Dakota were created by a single contract made at the onset of the tenure relationship. North Dakota, 255 F.3d at 601. Tenure, moreover, was not automatic; the North Dakota Board of Higher Education considered several factors in making tenure determinations, "including scholarship in teaching, contribution to a discipline or profession through research, other scholarly or professional activities, and service to the institution and society." Id.

. Notably, we are not presented with a scenario where a severance payment is exchanged for the relinquishment of rights contracted for at the time of employment. We point this out only to emphasize that we need not rely on the recently issued Revenue Ruling 2004-110 in making this decision; and thus, we decline to comment about whether, in light of this recently issued ruling, a severance payment in exchange for rights granted to an employee at the time of employment constitutes FICA wages.