**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0937n.06**

**No. 12-5715**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 31, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SAMUEL DAVID MOORE, professionally known as Legendary Soul Man Sam Moore, Inc. and JOYCE ELLEN MOORE, | ) ) ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE SJM TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WEINSTEIN COMPANY, LLC, THE, dba | ) | MIDDLE DISTRICT OF TENNESSEE |
| Dimension Films; MGM STUDIOS, INC.; | ) | |
| GENIUS PRODUCTS, LLC; CONCORD | ) | |
| MUSIC GROUP, INC.; METRO- | ) | |
| GOLDWYN-MAYER STUDIOS, INC., | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HARVEY WEINSTEIN; BOB WEINSTEIN, | ) | |
| | ) | |
| Defendants. | ) | |

Before:  ROGERS and COOK, Circuit Judges; VAN TATENHOVE, District Judge.[*]

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

COOK, Circuit Judge. Plaintiff-appellant Sam Moore, half of the 1960s and '70s music duo "Sam & Dave" that sang the well-known songs "Hold On, I'm Comin'" and "Soul Man," appeals an adverse judgment on his trademark-infringement and common-law claims against the producers and distributors of "Soul Men," a 2008 fictional film starring actors Samuel L. Jackson and the late Bernie Mac (the "Movie"), and its accompanying soundtrack (the "Soundtrack"). Moore appeals five claims that center on a common theme: the Movie and Soundtrack infringed his unregistered trademarks of variations of the phrase "Soul Men," and appropriated his life story for defendants-appellees' pecuniary gain. For the following reasons, we AFFIRM the district court's grant of summary judgment.

I.

Sam Moore is a renowned entertainer. Signed with his coperformer Dave Prater by Atlantic Records in 1965, the duo released a 1967 album titled "Sam & Dave Soul Men" that included their hit single "Soul Man." Sam & Dave, also known as "Double Dynamite," recorded music in Memphis, Tennessee, at the Stax Records company. Though the duo broke up, they reunited during the early 1980s, performing together for the last time in 1982. Prater died in 1988. After Sam & Dave dissolved, Moore continued performing using the stage name "Sam Moore 'The Legendary Soul Man,'" or some variation thereof. By all accounts, Moore has enjoyed a successful career. He won a Grammy for "Soul Man," and the Rock & Roll Hall of Fame inducted Sam & Dave in 1992. His promoters currently refer to him as the "Legendary Soul Man."

Dimension Films, a division of The Weinstein Company, LLC ("TWC") acquired the rights to a screenplay titled "Soul Men" in late 2007. In 2008, Dimension released the Movie, an R-rated film starring Samuel L. Jackson and Bernie Mac. MGM Studios, Inc. distributed the Movie to theaters nationwide, Genius Products, LLC manufactured and distributed the DVDs and Blu-rays pursuant to an agreement to distribute all TWC home videos, and Concord Music Group, Inc. distributed the Soundtrack, titled "Soul Men The Original Motion Picture Soundtrack," which included no Sam & Dave songs.

In the Movie, Jackson's and Mac's characters form two-thirds of a 1960s soul trio named "Marcus Hooks and The Real Deal." The trio's third member, lead singer Marcus Hooks (played by musician John Legend), leaves the group and pursues an incredibly successful solo career. Jackson and Mac, however, labor as a duo for a short time before splitting up. The Movie catches up with the pair in the present, living separate lives, one not having spoken to the other in years. After Hooks dies, Jackson and Mac reunite in Los Angeles and drive cross-country to perform at a memorial tribute at the Apollo Theater in New York City. As the duo drives eastward, they perform in small-town bars and venues. At one stop, they perform Sam & Dave's song "Hold On, I'm Comin'." The Movie ends after the duo arrives in New York City and performs at the memorial. Moore sees the movie as Jackson and Mac portraying Sam and Dave.

The Movie's release prompted Moore, his wife Joyce, and an entity named SJM Trust to sue the defendants for trademark violations under the Lanham Act, 15 U.S.C. § 1125(a), targeting two

aspects of the Movie and Soundtrack. First, Moore claimed that the Movie's title "Soul Men" infringed his common-law trademarks in the phrases "Soul Men," "Soul Man," "The Legendary Soul Man," "The Original Soul Man," and "The Original Soul Men" (collectively, the "marks"). Second, Moore alleged that the Movie and Soundtrack infringed his interest in (i) the 1967 album "Sam & Dave Soul Men," featuring the Sam & Dave single "Soul Man," and (ii) a 2008 documentary DVD, titled "The Original Soul Men Sam & Dave." Moore also advanced claims for trademark dilution, violation of his right of publicity, violation of the Tennessee Consumer Protection Act, common-law unfair competition, false light invasion of privacy, unjust enrichment, and civil conspiracy.

After the district court dismissed Joyce Moore and the SJM Trust, it granted summary judgment to the defendants on each of Moore's claims in a thorough, well-reasoned opinion. Moore timely appeals that judgment as to the following claims: Lanham Act unfair competition, 15 U.S.C. § 1125(a); Lanham Act trademark-dilution, 15 U.S.C. § 1125(c); state trademark infringement; state common-law unfair competition; state consumer protection; and violation of his common-law right of publicity. After reviewing the complete record and the district court opinion, and evaluating the parties' submissions to this court, we determine that the district court properly dispensed with Moore's Lanham Act and state unfair-competition claims and further explanation would be duplicative and serve no jurisprudential purpose. Accordingly, we adopt the district court's reasoning from its May 23, 2012, memorandum to affirm the grant of summary judgment to

defendants on those claims.  We now review Moore's publicity, state-law trademark, and consumer

protection claims.

II.

A.  Standard of Review

This court reviews the grant of summary judgment de novo, *Appoloni v. United States*, 450

F.3d 185, 189 (6th Cir. 2006), affirming where no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine issue

of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the

evidence and draw all reasonable inferences in favor of the nonmoving party, *see Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), asking "whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law," *Anderson*, 477 U.S. at 251–52.  "We may affirm the district court's

determination on any grounds, including grounds not relied upon by the district court." *Handy-Clay

v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (citation and internal quotation marks

omitted).

B.  Right of Publicity

Moore argued that defendants violated his right of publicity by misappropriating his "name, image, likeness and persona[]" for use in the Movie (R. 146, Am. Compl. ¶ 103) and for "commercial exploitation in which [defendants] have a pecuniary interest" (*id.* ¶ 104). After conducting a conflict-of-laws analysis, the district court applied Arizona publicity law, which utilizes the Restatement (Third) of Unfair Competition. (R. 375, Op. & Order at 60.) Finding that Moore could not establish identity misappropriation, the district court granted summary judgment to defendants. (*Id.* at 92.) Moore argues that the court improperly evaluated and failed to consider relevant evidence.

The right of publicity protects the nonconsensual use of one's "name, likeness, or other indicia of identity for purposes of trade." Restatement (Third) of Unfair Competition § 46. A viable right-of-publicity claim usually requires (1) defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100 (D. Ariz. 2006). And the First Amendment provides an additional hurdle that, as the Restatement explains, "fundamentally constrain[s]" the right. Restatement (Third) of Unfair Competition § 47 cmt. c. This court found "an inherent tension between the right of publicity and the right of freedom of expression under the First Amendment" that becomes "particularly acute when the person seeking to enforce the right is [] famous." *ETW Corp. v. Jireh Publ'g*, 332 F.3d 915, 931 (6th Cir. 2003). The right of publicity does not proscribe "use of a person's identity in . . . entertainment, works of fiction or nonfiction, or in advertising that is

incidental to such uses," Restatement (Third) of Unfair Competition § 47, including "dissemination of an unauthorized print or broadcast biography," or the "[u]se of another's identity in a novel, play or motion picture," *Id.* cmt. c.

To help determine "the proper balance [] between the First Amendment and [a plaintiff's] intellectual property rights," in *ETW Corp.*, 332 F.3d at 936, we applied the "transformative elements test," set forth by the California Supreme Court in *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 21 P.3d 797 (Cal. 2001). Under that test, we weigh the appropriated likeness against the appropriating work's expressiveness, evaluating "whether a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Comedy III Prods., Inc.*, 21 P.3d at 809. A "defendant's own expression" means "something other than the likeness of the celebrity." *Id.* Such "transformed" works lie beyond the right of publicity's reach.

### 1. Use of Identity in the Movie

The court's resolution in *ETW* informs this analysis. There, despite the defendants' sale of a painting clearly depicting professional golfer Tiger Woods celebrating his first victory at the Masters Golf Tournament in 1997, this court held that the defendant "added a significant creative component of his own to Woods's identity," such that the work contained "significant transformative elements which make it especially worthy of First Amendment protection and also less likely to interfere with the economic interest protected by Woods'[s] right of publicity." *ETW*

*Corp.*, 332 F.3d at 938. Therefore, even if Moore could demonstrate appropriation, a successful publicity claim requires the lack of these creative components, akin to a "depiction or imitation of the celebrity [that] is the very sum and substance of the work in question." *Comedy III Prods., Inc.* 21 P.3d at 809.

In this regard, Moore's claim is weaker than Tiger Woods's claim in *ETW*. We already explained that the Restatement generally does not protect the use of one's identity in a movie. *See* Restatement (Third) of Unfair Competition § 47 cmt. c. And as we explained when we adopted the transformative elements test, publicity claims trump the First Amendment if the "artistic expression takes the form of a literal depiction or imitation of a celebrity for commercial gain, directly trespassing on the right of publicity *without adding significant expression* beyond that trespass." *ETW Corp.*, 332 F.3d at 935 (emphasis added); *cf. Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 95 F.3d 959, 969 (10th Cir. 1996) (extending First Amendment protection to baseball parody cards and noting "[s]peech that entertains, like speech that informs, is protected by the First Amendment"). Without a doubt, the Movie added significant expressive elements to any purported use of Moore's identity.

2. Moore's Image in Advertising Inserts

This First Amendment protection falls away, Moore argues, in the case of the advertising insert featuring his image that Concord and Genius Products packaged with the Soundtrack's compact discs and Genius Products' DVDs. (R. 342-27, Concord Insert.) The insert's commercial

purpose, Moore argues, precludes application of the First Amendment's protections because the insert has "nothing whatsoever to do with the Movie or Soundtrack."

To promote sales of other Concord-owned CDs and DVDs, several pages of the insert, titled "THE ORIGINAL SOUL MEN ARE AT STAX," reprinted cover art from various Stax Records albums, including Otis Redding, Isaac Hayes, Booker T & the MGs, The Staple Singers, Wattstax, Angie Stone, Lalah Hathoway, Nikka Costa, and a tribute to the band Earth, Wind, and Fire. Another insert page, captioned "Essential Viewing for your Soul," featured the images of three DVDs' cover art: "Respect Yourself: The Stax Records Story"; "Dreams to Remember: The Legacy of Otis Redding"; and "The Stax/Volt Revue Live in Norway 1967." The picture of this last DVD's cover, "The Stax/Volt Revue Live in Norway 1967," looks like a concert promotional flyer ("Concert Cover") and displays the names and images of the performers in that 1967 show: "The Sensational Otis Redding," "Double Dynamite!! Sam and Dave," "Arthur Conley," "Eddie Floyd," "The Mar-Keys," and "Booker T. and the M.G.'s." Concord Music Group's logo also appears on the bottom righthand corner of the insert. These uses, Moore claims, misappropriate his publicity rights and merit no First Amendment protection. (Appellant Reply Br. at 16.)

With regard to the Concert Cover, Moore does not dispute that Concord Music Group owns the rights to promote this video depicting a concert in which he performed. (*See* R.146, Am. Compl. ¶ 40 n.6 (acknowledging that "Stax filed for bankruptcy in 1975, and certain of the assets of the company were acquired by Fantasy Records in 1977."); Appellee Br. at 50 n.27.) *See also*

Restatement (Third) of Unfair Competition § 46 cmt. f ("Conduct that would otherwise infringe the personal or commercial interests protected by the rights of privacy and publicity is not actionable if the conduct is within the scope of consent given by the holder of the right."). Furthermore, the insert title page, which states "THE ORIGINAL SOUL MEN ARE AT STAX," clearly refers to the numerous soul albums depicted therein, of which the Concert Cover—featuring Sam and Dave, identified as "Double Dynamite"—is but one. (*See* R. 342-27, Concord Insert, ID 9672, 9687–88.) Moore offers no evidence that the title page causes confusion. Read in context, no reasonable juror would mistake this "Soul Men" reference for Sam & Dave.[1] *See* Restatement (Third) of Unfair Competition § 46 cmt. d ("[I]n the case of an alleged visual likeness, the plaintiff must be reasonably identifiable from the photograph or other depiction."). And the fact that the soundtrack producers marketed their product to fans of a variety of soul artists, including Sam & Dave, does not suggest otherwise. (*See* R. 342-27.) Because Moore fails to show a genuine issue on this publicity claim, we affirm the district court's grant of summary judgment.

C. State Trademark Dilution

Moore also sued for state trademark dilution under the Tennessee Trademark Act (TTMA), Tenn. Code Ann. § 47-25-513. When defendants argued that Arizona law governed these claims, Moore responded that the court need not engage in a conflict-of-laws analysis because no conflict

---

[1]We note that a different version of the insert included the "Soul Men" title and the Concert Cover, along with all of the other soul artists, on a single page. (*See* R. 342-27, ID 9672.) We discern no substantive difference between the two inserts.

existed between Tennessee and Arizona trademark statutes. (R. 340, Pl.'s Opp'n Def.'s Mot. Summ. J. at 16 n.25; R. 375, Op. & Order at 56 n.28.) Exercising diversity jurisdiction, we apply the forum state's choice- of-law rules. *See, e.g.*, *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Under Tennessee law, "a conflict between the laws of the states at issue is a necessary predicate to deciding which state's (or states') laws should govern the various issues presented in the case." *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *29 (Tenn. Ct. App. June 29, 2007). On de novo review, we first determine whether a conflict exists between the Arizona and Tennessee trademark statutes.

The district court erred when it found "a conflict of laws relative to the . . . [state trademark] claims"; in fact, Tennessee and Arizona have identical trademark-dilution statutes. *Compare* Tenn. Code Ann. § 47-25-513 ("Injury to business reputation; dilution"), *with* Ariz. Rev. Stat. Ann. § 44-1448.01 ("Injury to business reputation; dilution"). The two statutes mirror each other, virtually word for word. The district court thus improperly dismissed Moore's TTMA claim on the grounds of a conflict.[2] As the appellees point out, though, Moore's state trademark-dilution claims still fail because both Arizona and Tennessee law requires ownership of a mark that is "famous in this state." Ariz. Rev. Stat. Ann. § 44-1448.01; Tenn. Code Ann. § 47-25-513. And the "famousness" factors

---

[2]Moore's briefing incorrectly identifies Arizona Revised Statute § 44-1448 as Arizona's statutory equivalent to his Tennessee trademark claim. Section 44-1448 actually controls the cancellation of state registrations. Arizona Revised Statute § 44-1448.01 governs trademark dilution.

laid out by the state statutes track the Lanham Act's famousness factors that Moore could not satisfy for his federal trademark-dilution claim.

The Lanham Act "famousness" factors substantially overlap with Tennessee's "famousness" evaluation. *Compare* Tenn. Code Ann. § 47-25-513(a)(1)–(8), *with* 15 U.S.C. § 1125(c). In fact, the only factor that Tennessee relies on that the Lanham Act omits—the nature and extent of use of same or similar mark by third parties—weighs *against* Moore. The district court found at least thirty-four third-party musical albums, currently available for purchase, that either consist of or incorporate the phrases "soul men" or "soul man." (R. 375, Op. & Order at 36–37.) Although the scope of the famousness inquiry under state law requires courts to evaluate in-state famousness, it still turns on the marks' fame—not Moore's. *See* Tenn Code Ann. § 47-25-513(a) (protecting a "mark which is famous in this state" once "the mark has become famous"). As with his federal trademark-dilution claim, Moore urges that his personal fame requires reversal. (Appellant Br. at 60 ("Clearly, for Sam Moore, whose career, life and fame in Tennessee is well documented . . . he should be credited with at least raising a triable issue of fame . . . .").) Without evidence of the marks' fame, however, we affirm the district court's dismissal of Moore's TTMA claim.

D. State Consumer-Protection Claims

Moore brought two claims under the Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. §§ 47-18-101 et. seq. First, he alleged that in connection with the marketing and advertising of the Movie, Genius Products' DVDs and Concord's Soundtrack "intentionally and

willfully caused a likelihood of confusion or misunderstanding" regarding whether Sam Moore sponsored the Movie and Soundtrack. (R. 146, Am. Compl. ¶ 138.) Though Moore does not identify the precise subsection of the Tennessee Code, we review his claim under the most analogous section, § 47-18-104(b)(2) ("Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services.").

Moore argues that the district court should have applied Tennessee law, rather than "summarily dismiss" his claim for his failure to brief the choice-of-law issue. (Appellant Br. at 59; *see* R. 375, Op. & Order at 62.) But as appellees note, even if Moore had responded to defendants' choice-of-law argument and his preferred Tennessee law did apply, "[t]he same analysis that applies to the federal Lanham Act claims also applies to the state claims of unfair competition under . . . the Tennessee Consumer Protection Act." (*McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 816 (M.D. Tenn. 2000).

In response to this argument, we adopt the district court's reasoning that under *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), the First Amendment limits Moore's protectable interests in his purported marks. And we adopt its decision that Moore's "competing titles" claim established no likelihood of confusion. (*See* R. 375, Op. & Order at 64–67, 70–78.) These determinations, paired with Moore's decision not to appeal the district court's no-likelihood-of-confusion holding and his failure to cite to evidence establishing confusion, foreclose his TCPA likelihood-of-confusion claim.

Moore's pleadings doom his second TCPA claim as well. He alleges that the Genius DVDs and the Concord Soundtrack "intentionally and willfully made, published, disseminated, circulated, and placed before the purchasing public advertisements containing false, deceptive and misleading statements about Sam Moore's affiliation, connection or association with the Movie." (R. 146, Am. Compl. ¶ 137.) Again, Moore fails to identify the precise TCPA violation, but we nevertheless analyze his claim under Tenn. Code Ann. § 47-18-104(b)(5) (barring "[r]epresenting that goods or services have sponsorship [or] approval . . . that they do not have").

When defendants argued that Arizona's consumer-protection law should apply instead of Tennessee's, Moore offered only a footnote explaining that his right-of-publicity choice-of-law argument "applies equally" to the consumer-protection choice-of-law challenge. (R. 340, Pl.'s Resp. Def.'s Mot. Summ. J. at 16 n.25.) As the district court noted, however, Moore's right-of-publicity claim and his consumer-protection claims are "substantively distinct." (R. 375, Op. & Order at 56 n.28.) Accordingly, left with no argument on why Arizona law should not apply to Moore's consumer-protection claims, and instructed by Moore to rely on his publicity choice-of-law argument, the district court found that Arizona law should apply. (*Id.* at 62.) Having been instructed by Moore to rely on his publicity choice-of-law analysis, the district court understandably declined to survey Arizona law for a corresponding Arizona consumer-protection provision and pursue its own conflict-of-laws analysis.

Moreover, even applying Tennessee law, Moore's district court pleadings never responded to defendants' merits-based attacks on his Tennessee consumer-protection claim. At summary judgment, defendants challenged both the choice of Tennessee law *and* the merits of his Tennessee claim, pointing to Tennessee cases explaining that the TCPA protects "consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices . . . in part or wholly within this state." *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 753 (Tenn. Ct. App. 2006) (citing Tenn. Code. Ann. § 47-18-102). Missing from Moore's claim, defendants argued, was any "admissible evidence that [the] Defendants' actions deceived or injured Tennessee consumers." (R. 306, Def.'s Mot. Summ. J. at 13.) Moore never responded to defendants' merits-based attack on his TCPA claim, offering only the choice-of-law footnote, leaving defendants' merits-based attack unrefuted.

Moore compounds this error on appeal. His opening brief disputes only the district court's choice-of-law dismissal, asking us to reinstate his TCPA claim so Moore can "proceed to enforce [his] claim[]." (Appellant Br. at 58–59.) But faced with summary judgment, Moore needed to show that a genuine issue of material fact existed regarding this TCPA claim. Fed. R. Civ. P. 56(c)(1) (obliging "[a] party asserting that a fact . . . is genuinely disputed [to] support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute"); *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) ("Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation and internal quotation marks omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (explaining that the court "no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact" (citation omitted)).  With Moore's failure to brief and argue the choice-of-law issue at the district court, his failure to respond to defendants' merits challenge at summary judgment or on appeal, we find no error in the district court's dismissal of his second consumer-protection claim.

III.

For these reasons, we AFFIRM.