# United States Court of Appeals for the Federal Circuit

2009-3254


ISMAEL DELGADO,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.


Ismael Delgado, of Miami, Florida, pro se.

Jane C. Dempsey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3254

ISMAEL DELGADO,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in
AT831M080855-I-1.

_____

DECIDED:  January 6, 2010

_____

Before NEWMAN, LOURIE, and LINN, Circuit Judges.

PER CURIAM.

Ismael Delgado appeals from the final decision of the Merit Systems Protection
Board ("Board") reversing the initial decision of the administrative judge ("AJ") and
affirming the Office of Personnel Management's ("OPM's") decision to terminate his
disability retirement annuity on the basis that he had been restored to earning capacity.
Delgado v. Office of Pers. Mgmt., No. AT-831M-08-0855-I-1 (M.S.P.B. April 10, 2009)
("Initial Decision"); Delgado v. Office of Pers. Mgmt., 112 M.S.P.R. 46 (2009) ("Final
Order").  Although we find that Delgado's award of back pay constitutes income under
the provisions of 5 C.F.R. § 831.1209, we vacate for a determination in the first instance
whether the award of back pay constitutes income in the year awarded or the year(s) it

would have been earned but for Delgado's unwarranted suspension for the purposes of determining earning capacity pursuant to 5 U.S.C. § 8337(d).

BACKGROUND

In 1987, Delgado retired from the United States Postal Service due to disability, and received a disability retirement annuity under the Civil Service Retirement System. He subsequently worked as a teacher, employed by the Miami-Dade School Board. His salary as a teacher was less than 80 percent of the salary he would have received in his former position, thus entitling him to continue receiving the annuity. In 2008, following receipt of a report from the Social Security Administration, OPM terminated Delgado's disability retirement annuity. OPM found that Delgado had been restored to his earning capacity because Delgado's earned income for 2006 was $72,766.00, an amount that exceeded 80 percent of the 2006 rate of pay of the position occupied by Delgado immediately before his retirement. The OPM further found that Delgado had been wrongly paid his annuity for several months and informed him of its intent to collect that overpayment.

Delgado requested reconsideration on the basis that $46,538.28 of the $72,766.00 was received as the result of litigation, following an unwarranted, indefinite suspension action taken against him by his former employer. Delgado argued that the money received as a result of litigation should not be considered part of his salary, as he received it for a period of time during which he was not employed. As a result, Delgado contended that his income did not exceed 80 percent of the salary currently associated with the position he held directly before retirement, that he was not restored to earning capacity, and that he was entitled to the continuation of his disability

retirement annuity. In August 2008, OPM issued a reconsideration decision affirming its termination of Delgado's disability retirement annuity. OPM reasoned that because the $46.538.28 was subject to federal employment taxes (viz., Social Security and Medicare taxes), it constituted earned income.

Delgado appealed the decision to the Board. The AJ reversed the OPM's decision, finding that the back pay award constituted an "amount received in court actions," excluded from income pursuant to 5 C.F.R. § 831.1209(f), rather than "income earned from personal work efforts," under 5 C.F.R. § 831.1209(c)(3). Initial Decision at 3-4.

OPM appealed the initial decision, and the full Board reversed. In its decision, the Board determined that the "amount the appellant received as a result of litigation clearly constituted back pay," and was thus earned income pursuant to 5 C.F.R. § 831.1209(d)(1)(i). Final Order, 112 M.S.P.R. at 149. In addition, the Board noted that the amount received was subject to federal employment taxes, which further indicated its nature as income pursuant to 5 C.F.R. § 831.1209(c)(1). The Board further found that if the award was excepted as an "amount[] received in court actions," it also met the exception to the court action exception for money received "in the . . . course of trade or business." Final Order, 112 M.S.P.R. at 149-50, 5 C.F.R. § 831.1209(f). The Board reasoned that the phrase "trade or business" was meant to relate to "activities focused on one's livelihood and earning a living," and that the award for back pay was therefore received in the course of Delgado earning his livelihood, because it was for services Delgado would have performed but for his improper, indefinite suspension. Id. at 50.

2009-3254                                    -3-

Delgado timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2006).

## DISCUSSION

The scope of our review in an appeal from a Board decision is limited. We can only set aside the Board's decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003). Here, the facts are not disputed, and our review focuses on whether the Board's actions were in accordance with law.

Delgado argues that the award of back pay does not constitute "wages" because it was not secured by personal work efforts or services. Rather, it was an award resulting from a decision of the State of Florida Division of Administrative Hearings that he had been improperly indefinitely suspended. Delgado further contends that Social Security payments were withheld from the payments by mistake, and that no federal taxes should have been withheld. Delgado also argues that the Board failed to review the decision of the Florida Administrative Law Judge in making its determination.

The government responds that the Board's determination was in accordance with law, and properly relied upon OPM's regulations in determining that the back pay awarded to Delgado constituted earned income. The government argues that, according to § 831.1209(c) of the regulations, total income from all sources is used to determine earning capacity, that this includes wages, and that any income subject to federal employment taxes constitutes earned income. Delgado did not argue below that

Social Security was wrongfully withheld, and thus the government contends that the argument is waived. The government further points to section 5 C.F.R. § 831.1209(d) for the proposition that "wages" include back pay. In addition, the government argues that the decision in the Florida administrative hearing is not relevant, as it does not indicate the type of tax treatment that should be given to the awarded back pay.

We agree with the government that back pay, received as a result of an administrative proceeding, constitutes income within the meaning of the regulations. The governing statute states that "[i]f an annuitant receiving disability retirement . . . is restored to an earning capacity fairly comparable to the current rate of pay of the position occupied at the time of retirement, payment of the annuity terminates" and that "[e]arning capacity is deemed restored if in any calendar year the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement." 5 U.S.C. § 8337(d). The implementing regulation explains that earning capacity "is demonstrated by an annuitant's ability to earn post-retirement income in a calendar year through personal work efforts or services," before describing "two sources of income: wages and self-employment income. All income which is subject to Federal employment taxes (viz., Social Security or Medicare taxes) . . . constitutes earned income. In addition any other income as described in this section also constitutes earned income." 5 C.F.R. § 831.1209(c), (c)(1). Subsection (d) then defines the term "wages" as "the gross amount of all remuneration for services performed by an employee for his or her employer, unless specifically excluded herein" and states that wages include back pay. 5 C.F.R. § 831.1209(d), (d)(1)(i). Finally, subsection (f) lists income not considered in determining

earning capacity, including "amounts received in court actions whether by verdict or settlement, unless received in the course of their trade or business." 5 C.F.R. § 831.1209(f)(7).

Delgado was reinstated and awarded back salary as a result of a state administrative proceeding. The award of back pay was subject to federal employment (Social Security) taxes, and as a result, constitutes income for the purposes of 5 C.F.R. § 831.1209. Delgado waived his argument that Social Security taxes were wrongly withheld from the award. Even if he had not, it is unclear why the money received would be exempt from federal employment taxes, given that tax law generally treats back pay awarded in litigation as wages for the purposes of social security or other federal employment taxes. See C.I.R. v. Schleier, 515 U.S. 323, 330 (1995) (back wages recovered under ADEA settlement are not excludable income where the recovery was not on account of personal injury or sickness); see also Abrahamsen v. United States, 228 F.3d 1360, 1363-64 (Fed. Cir. 2000) (exit incentives received pursuant to a settlement agreement constitute wages for the purposes of federal employment taxes). In any event, whether the back pay award was properly subject to federal employment taxes is not an issue before us.

The regulation further specifically states that back pay is included in wages. 5 C.F.R. § 831.1209(d)(1)(i). Nor does the award meet the exception of 5 C.F.R. § 831.1209(f)(7) for "amounts received in court actions whether by verdict or settlement." The administrative proceeding was not a court action. Moreover, to the extent that there is any conflict between the inclusion of back pay and the exclusion of amounts received in court actions, the specific enumeration of back pay as constituting

income clearly prevails over the general recitation of court actions, particularly when it is doubtful here that the recovery from an administrative agency came from a court action.

Although we agree with the Board that the back pay award constitutes income not exempt under subsection (f)(7), the Board did not explicitly determine for which year(s) the award should be considered income for purposes of determining earning capacity under 5 U.S.C. § 8337(d) (<u>viz.</u>, the year(s) <u>for</u> which it was awarded or the year <u>in</u> which it was awarded). Thus, the question remains open as to whether the amount of the back pay is properly counted as a measure of earning capacity in the year the award was made, when the back pay includes an earlier year's pay. Here, the regulation is ambiguous. For example, 5 C.F.R. § 831.1209(c)(5) states that "income is earned in the calendar year the annuitant actually renders the personal work effort or service and either actually or constructively receives the remuneration, except as provided under paragraph (c)(7) of this section." The excepted paragraph explains that for certain deferred compensation plans that defer the constructive receipt of income for tax purposes, the income is not deferred for the purposes of determining earning capacity. 5 C.F.R. § 831.1209(c)(7). Rather, that income is "considered income in the calendar year in which the services are performed, even though the Internal Revenue Code may exclude [them] from income for tax purposes." <u>Id</u>. These subsections are consistent with 5 C.F.R. § 831.1209(c), which states that earning capacity is "demonstrated by an annuitant's ability to earn post-retirement income in a calendar year through personal work efforts or services." All three of these statements, taken together, evince an intent to look at the ability of an annuitant to earn income in a given

year, presumably the year in which the work was performed or would have been performed but for the suspension later found unwarranted.

On the other hand, section (c) states that "[i]n determining an annuitant's income for a calendar year, the following considerations apply," immediately following which subsection (1) explains that "[t]here are two sources of income: wages and self-employment income. All income which is subject to Federal employment taxes . . . constitutes earned income." 5 C.F.R. § 831.1209(c), (c)(1). Under that reading, therefore, the regulation could fairly be said to include in income "for a calendar year" all income subject to federal employment taxes in that year.

Following the above analysis, Delgado's back pay award, if considered attributable to the year in which the work would have been performed but for the unwarranted suspension, may well not have reached the 80 percent threshold of 5 U.S.C. § 8337(d). If, on the other hand, the award is attributable to the year in which it was awarded, then Delgado's income would indeed have exceeded 80% of his previous income. The Board did not make an explicit finding that the award to Delgado constituted income in the year in which it was awarded, and there is therefore no record on which we can review its determination. See, e.g., SEC v. Chenery Corp., 318 U.S. 80, 88 (1943).

Accordingly, we vacate the Board's decision and remand for further consideration in accordance with this opinion.

COSTS

No costs.