# United States Court of Federal Claims

No. 17-75 T

Filed: January 31, 2018

_____

**SAMUEL E. GINSBURG &**
**JOAN A. GINSBURG,**

      *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**

      *Defendant.*

_____

Federal Income Tax Liability;
Recovery of Capital Doctrine;
Nontaxable Contribution to
Capital; Internal Revenue Code §
61

 *Timothy L. Jacobs, Esquire*, Hunton & Williams, LLP, Washington, DC, for plaintiffs.

 *Sophia Siddiqui, Esquire*, United States Department of Justice, Tax Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge.*

 New York provides state income tax credits to corporate and individual taxpayers who meet the requirements of the Brownfield Redevelopment Tax Credit program. The Brownfield program incentivizes private investors to rehabilitate certain areas of New York by applying a percentage of a project's costs against a corporation's franchise tax or an individual's income tax liability. Any excess amount may be deferred to another tax year or credited as an overpayment. New York does not tax any portion of the credit as income.

 The issue in this action is whether the excess amount of a state tax credit paid to the plaintiffs by the state of New York is subject to federal income tax liability. Plaintiffs argue that their $1,864,618 "refund" is excludable from federal taxable income or, alternatively, is a nontaxable recovery of capital. Plaintiffs seek a refund from the Internal Revenue Service of $602,530.00, plus interest. Defendant argues that the excess credit is a cash subsidy in substance, and because it is not excluded from § 61 of the Internal Revenue Code, it constitutes taxable income. The parties' cross-motions for summary judgment are before the court.

# BACKGROUND

From 2004 to 2011, plaintiffs acquired and restored an abandoned shoe factory and converted it into a 134-unit residential rental building in Brooklyn. The state of New York designated the property, 220 Water Street, a "brownfield site" and approved plaintiffs' application to participate in the Brownfield Redevelopment Tax Credit ("Brownfield") program.

Hawthorne Village, LLC, an entity principally owned by plaintiff,[1] developed the project 220 Water Street. New York certified Hawthorne's Brownfield application in December of 2011, officially placing the property in service for income tax purposes. When Hawthorne filed its 2011 tax return as a partnership, the income tax items passed through to plaintiff, Mr. Ginsburg.

Plaintiffs were to receive a payment from the state of New York representing 10% of their site preparation and tangible property expenses. The New York state tax department would first apply the credit against plaintiffs' income tax liability. Plaintiffs could then choose to have any remaining credit deferred to another year or transferred directly to them as a cash payment.

After plaintiffs filed their 2011 tax return and applied for the Brownfield credit, the New York tax department initiated a desk audit. The audit delayed plaintiffs' receipt of their 2011 Brownfield credit to 2013. Plaintiffs later received a payment from New York for $1,864,618, the credit amount that exceeded their 2011 state income tax liability. When plaintiffs filed their 2013 tax return, they did not include the $1.8 million payment as income. The Internal Revenue Service conducted an audit and asserted a tax deficiency. Plaintiffs paid the deficiency, $602,530, which they now want the IRS to refund to them.

Plaintiffs assert that the IRS erred in determining that the $1,864,618 payment had to be included in plaintiffs' gross income. Plaintiffs argue that: (1) the tax credit is not income, but is a classic recovery of capital; and (2) even if the credit is viewed as income, it is excludable (a) as a nontaxable contribution to capital, (b) under the "tax benefit rule," or (c) under the "general welfare" exclusion.

Defendant asserts that the $1,864,618 payment is income under § 61 of the Internal Revenue Code. The government argues that while the portion of the tax credit that reduced plaintiffs' state tax liability to zero is not taxable by law, plaintiffs cannot cite any legal precedent that excludes or excepts the excess cash payment from the federal definition of income.

---

[1] Plaintiff, Mr. Ginsburg, owns approximately 90 percent of Hawthorne's partnership interests.

## STANDARD OF REVIEW

In summary judgment motions, the movant prevails "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Cross-motions for summary judgment require "each party [to carry] the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Massey v. Del Labs., Inc.,* 118 F.3d 1568, 1573 (Fed. Cir. 1997); *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978). A genuine dispute as to any material fact will "affect the outcome" of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In refund suits, the plaintiff bears the burden of proof as to its entitlement to a tax refund. *See Abrahamsen v. United States*, 228 F.3d 1360, 1364 (Fed. Cir. 2000). The government "benefits from the presumptive correctness" of the administrative determination. *Young v. Rubicam, Inc. v. United States*, 410 F.2d 1233, 1239 (Ct. Cl. 1969). The plaintiff bears the burden of proof regarding the refund amount owed by the government. *See e.g., Thomas v. United States*, 56 Fed. Cl. 112, 116–17 (2003).

## DISCUSSION

Both parties have moved for summary judgment. The only issue is whether the excess amount of a state tax credit paid to the plaintiffs by the state of New York is subject to federal income tax liability. This is a question of first impression in this court.

Plaintiffs' total Brownfield credit was $4,975,595, with $1,958,841 allotted for 2011 and $3,016,754 allotted for subsequent years. Plaintiffs' state income tax liability for the year of 2011 was $94,223. New York first applied the 2011 Brownfield credit to eliminate plaintiffs' 2011 state income tax liability. It is undisputed that this portion of the credit is not taxable because it merely reduced the amount of tax that plaintiffs would have otherwise owed that year. *Maines v. Commissioner*, 144 T.C. 123 (2015) (citing *Randall v. Loftsgaarden,* 478 U.S. 647, 657 (1986)). Further, this is the only portion of the credit that we could consider to be a refund.[2]

However, throughout their briefs, plaintiffs refer to the *entire* Brownfield credit as "refundable"; the state of New York calls it an "overpayment." N.Y. Tax Law § 33 (McKinney). The fact is that plaintiffs never actually paid $1,864,618 to the state of New

---

[2] Plaintiffs admit that the refund label is a state-created tax-law "fiction." *See Maines*, 144 T.C. at 133 (2015) (explaining that a particular label given to a legal transaction under state law is not necessarily controlling for federal tax purposes) (citing Morgan v. Commissioner, 309 U.S. 78, 80 (1940).)

York as tax in 2011. Thus, to call this payment a refund would allow plaintiffs and the state of New York to manipulate federal income taxation laws. *See Sunoco v. United States*, 129 Fed. Cl. 322, 330 n.5 (2016) *appeal docketed*, No. 17-1402 (Fed. Cir. Dec. 22, 2016).

New York state law entitles plaintiffs to receive $1,864,618, and New York chose to treat this legal interest as a nontaxable refund. Ultimately, though, federal law designates how state-created legal rights or interests will be taxed. *Maines*, 144 T.C. at 131 (quoting *Drye v. United States*, 528 U.S. 49, 58 (1999)).[3] Regardless of their form, federal tax law looks to the substance of state-created legal interests. *Maines*, 144 T.C. at 132 (citing *United States v. Irvine*, 511 U.S. 224, 238–40 (1994)).

## I.      Federal Income Taxation Law

Section 61(a) of the Internal Revenue Code states that "except as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. § 61 (1986). Unless an exclusion applies, payments that are "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion" constitute taxable income. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955). Tax Court precedent dictates that "a taxpayer recognizes income when he has an unqualified, vested right to receive immediate payment." *Maines*, 144 T.C. at 136 (quoting *Martin v. Commissioner*, 96 T.C. 814, 823 (1991)).

Substantively, the excess Brownfield credit was nothing more than a cash transfer from the state to the taxpayer. New York's payment came with no strings attached. As soon as New York determined that plaintiffs' property met the Brownfield requirements and sent the payment, plaintiffs were free to spend, save, or transfer the excess credit in whatever way they pleased. While it is possible that plaintiffs' property will cease to meet Brownfield requirements, it is also possible that plaintiffs will sell the property at a loss and then be exempt from paying capital gains tax in the future. In the present day, plaintiffs have received a payment that is, substantively, an undeniable accession to wealth over which they have complete dominion. Thus, under federal law, the $1,864,618 payment is income.

## II.      Exclusions or Exceptions

Next, we must determine whether any of the exceptions or exclusions that plaintiffs cite apply here. Courts must construe exclusions from income narrowly. *Commissioner v. Schleier*, 515 U.S. 323, 327–28 (1995) (citing *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring)). This sweeping definition of income means that plaintiffs must point to a specific statutory exception or exclusion to begin to meet their burden of proof. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955) ("the Court has

---

[3] In *Drye*, the Supreme Court explained that federal courts first look to state law to "determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."

given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted," citing *Commissioner v. Jacobson*, 336 U.S. 28 (1949)).

### a. Recovery of Capital Theory

Plaintiffs have proffered the theory that the Brownfield credit is a recovery of capital and thus not income. *See S. Pac. Co. v. Lowe*, 247 U.S. 330 (1918). Under this doctrine, the repayment of an initial investment is not taxable. However, with plaintiffs' very first illustration, we see that the doctrine has no relevance to the instant case. A crucial component of plaintiffs' Blackacre example is missing. (If Taxpayer sells Blackacre for $100 but his cost basis…) Stop. Did plaintiffs sell 220 Water Street? No. Did plaintiffs transfer or exchange the property? No. Did they even transfer *management* of the property? No.

Recovery of capital doctrine is limited to sales of goods. *See In re Tax Refund Litigation*, 766 F. Supp. 1248, 1261 (E.D.N.Y. 1991), *aff'd in part, rev. in part*, *In Re MDL-731 Tax Refund Litigation of Organizers and Promoters of Investment Plans Involving Brook Properties Leasing, et. al., v. United States*, 989 F.2d 1290, 1304 (2d Cir. 1993). This limitation derives from the distinction between capital and income. *Id.*

Income has been defined to include "the gain derived from capital, from labor, or from both combined" and to exclude "returns of capital such as those received when capital assets are sold." *Id.* at 1262 (quoting *Eisner v. Macomber*, 252 U.S. 189, 207 (1920)). Meanwhile, capital is understood to mean "money or property used for the production of wealth." *In re Tax Refund Litigation*, 766 F. Supp. at 1262 (citing Ballentine's Law Dictionary (3d Ed. 1969)).

There has been no sale of goods in this case. Thus, there can be no excluding of this payment from income as a recovery of capital. Plaintiffs have not sold or transferred any of their capital assets. As far as the pleadings show, they have retained nearly 100% ownership and operation control of their Brownfield property.[4] No "recovery" has yet occurred because plaintiffs' capital investment is still ongoing. Therefore, we must reject this argument.

### b. Other Theories

We cannot conclude that this payment represents a nontaxable contribution to capital, as plaintiffs would have us do. There is no evidence, nor is there federal law specifically allowing for such an exclusion, that New York paid $1,864,618 to plaintiffs in exchange for partnership interests in Hawthorne. Furthermore, while the Brownfield project provided an investment incentive to plaintiffs, no inducement by the state of New York occurred. Plaintiffs freely chose to participate and take advantage of New York's

---

[4] Nor did plaintiffs ever pay $1,864,618 in taxes to the state of New York.

state tax credit program.

Again, because the credit was not a refund of taxes that plaintiffs previously paid, we must also reject plaintiffs' argument based on the Tax Benefit Rule.

Finally, this credit is not excludable from plaintiffs' federal taxable income as welfare. To qualify for the general-welfare exclusion, a payment must (1) be made from government funds, (2) promote the general welfare (generally based on need), and (3) not be compensation for services. Rev. Rul. 2005–46, 2005–2 C.B. 120. Following this Revenue Ruling, tax courts have held that grants from welfare programs that do not require recipients to demonstrate need do not qualify for the general-welfare exclusion. *Maines*, at 138 (citing *Bailey v. Commissioner*, 88 T.C. 1293 (1987) (denying the exclusion for payments from a façade grant program when the taxpayer only had to show ownership and building code compliance to qualify)). The Brownfield credit plaintiffs received was not conditioned on a showing of need. Thus, this exclusion is inapplicable.

## CONCLUSION

We hold that the $1,864,618 payment from the state of New York to plaintiffs constitutes a gain that does not qualify for any exclusion or exception from the federal definition of income. Thus, plaintiffs are not entitled to the $602,530 refund they seek from the IRS. Plaintiffs' partial motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**. The Clerk of Court will dismiss plaintiffs' Complaint. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Judge